# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

No. 14-15976

ARIZONA GREEN PARTY, and CLAUDIA ELLQUIST,

Plaintiffs-Appellants,

v.

KEN BENNETT, in his official capacity as Secretary of State of Arizona,

Defendant-Appellee.

Appeal from the United States District Court for the District of Arizona

Honorable Judge Neil V. Wake Presiding

District Court No. 2:14-CV-00375-NVW

## BRIEF OF PLAINTIFFS-APPELLANTS

Robert E. Barnes (State Bar No. 235919)

601 South Figueroa Street, Suite 4050

Los Angeles, CA 90017

Tel: (310) 510-6211/ Fax: (310) 510-6225

E-mail: robertbarnes@barneslawllp.com

Counsel for Plaintiffs-Appellants

## TABLE OF CONTENTS

**Page**

I. STATEMENT OF JURISDICTION ...................................................1

II. ISSUE PRESENTED FOR REVIEW ...........................................2

III. STANDARD OF REVIEW ...........................................................2

IV. STATEMENT OF THE CASE ......................................................3

V. STATEMENT OF RELEVANT FACTS .......................................3

    The Parties ...................................................................................3

    The Statutory Schema ................................................................4

    The Critical Role of Ballot Access for Candidates & Minor Parties:
    First Amendment Fundamental Liberties ............................................8

VI. ARGUMENT SUMMARY ...........................................................14

VII. ARGUMENT ..............................................................................16

    A.    The Statutory Deadline is Facially

            Unconstitutional .......................................................16

    B.    Appellants Will Be Irreparably Harmed By the Early
            Deadline .....................................................................30

    C.    No Harm Would Come To the State of Arizona From
            Extending the Deadline .............................................32

    D.    Newly Qualifying Parties May Nominate By Convention To
            Remedy Any Conflict With the State's Primary
            Schedule......................................................................33

VIII. CONCLUSION ..........................................................................36

# TABLE OF AUTHORITIES

**CASES**                                                                **Pages**

*Amos v. Hadnott*, 394 U.S. 358 (1969) ................................................24

*Anderson v. Celebrezze,* 460 U.S. 780 (1983) .............................................passim

*Anderson v. Hopper*, 498 F.Supp. 898 (D.N.M. 1980) ......................................24

*Brown v. California Dept. of Transportation*, 321 F.3d 1217, 1221
(9th Cir. 2003) ...................................................................................2

*California Democratic Party v. Jones,* 530 U.S. 567, 574 (2000) ........................18

*California Justice Committee v. Bowen*, No. CV 12-3956
(C.D. Cal. October 18, 2012) ...............................................................27

*Caruso v. Yamhill County ex. Rel. County Comm'r,*
422 F.3d 848 (9th Cir. 2005) ...............................................................2

*Citizens To Establish a Reform Party in Arkansas v. Priest*, 970 F. Supp. 690,
695-96 (E.D. Ark. 1996) ...............................................................passim

*Clingman v. Beaver,* 544 U.S. 581, 603, 125 S.Ct. 2029,
161 L.Ed.2d 920 (2005) ....................................................................25

*Community Party of Indiana v. Whitcomb*, 414 U.S. 441 (1974) .......................24

*Cripps v. Seneca County Bd. of Elections,* 629 F.Supp. 1335, 1338
(N.D.Ohio 1985) ...............................................................................23

*Dunn v. Blumstein*, 405 U.S. 330, 358 (1972) .....................................26
*Elrod v. Burns,* 427 U.S. 347, 353 (1976) ...........................................30

*Eu v. San Francisco County Democratic Central Comm.,*
489 U.S. 214, 224, 109 S.Ct. 1013, 1020–21, 103 L.Ed.2d 271 (1989) .............21

*Green Party of Tennessee v Hargett*, 882 F Supp 2d 959
(m.d. Tennessee 2012) ......................................................................35

*Illinois Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 185 (1979) .....9

*Libertarian Party of Ky. v. Ehrler,* 776 F.Supp. 1200, 1205–06
(E.D.Ky.1991) ...........................................................................23,28

**Pages**

*Libertarian Party of Nevada v. Swackhamer*, 638 F.Supp. 565
(D. Nev. 1986) ...................................................................33,34

*Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 587
(6th Cir. 2006) ..................................................................28,31

*Libertarian Party of Ohio v. Brunner*, 567 F. Supp. 2d 1006, 1015
(S.D. Ohio 2008) ...............................................................36,37

*Libertarian Party of Oklahoma v. Oklahoma State Election Bd.*, 593 F. Supp.
118, 124 (W.D. Okla. 1984) ..............................................36,38

*Libertarian Party of Tennessee v. Goins*, 793 F.Supp.2d 1064
(M.D. Tenn. 2010) .............................................................30,31

*Lubin v. Panish,* 415 U.S. 709, 716, 94 S.Ct. 1315, 1320,
39 L.Ed.2d 702 (1974) ...........................................................20

*MacBride v. Exon,* 558 F.2d 443 (8th Cir.1977) ...........................23,27

*McCarthy v. Briscoe*, 429 U.S. 1317 (1976) .....................................23

*McCarthy v. Hardy*, 420 F.Supp. 410 (E.D. La. 1976) ......................27

*McCarthy v. Kirkpatrick*, 420 F.Supp. 366 (W.D. Mo. 1976) ..........27

*McCarthy v. Noel*, 420 F.Supp. 799 (D.R.I. 1976) ...........................27

*McClain v. Meier*, 637 F.2d 1159 (8th Cir. 1989) ..............................27

*Munro v. Socialist Workers Party,* 479 U.S. 189, 193 (1986) ............19

*Nader 2000 Primary Comm., Inc., v. Hazeltine*, 110 F.Supp.2d 1201, 1208
(D.S.D. 2000) ........................................................................27

*Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008) ..............................27

*Norman v. Reed,* 502 U.S. 279, 288–89, 112 S.Ct. 698,
116 L.Ed.2d 711 (1992) ...............................................passim

*Rockefeller v. Powers*, 917 F.Supp. 155, 161 (E.D.N.Y. 1996) .........26

**Pages**

*Socialist Labor Party v. Rhodes*, 318 F. Supp. 1262, 1273
(S.D. Ohio 1970) ...................................................................................33,34

*Sweezy v. New Hampshire,* 354 U.S. 234, 250–51,
77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957) ...........................................20,21

*Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214, 107 S.Ct. 544, 93
L.Ed.2d 514 (1986) ..........................................................................18

*The Constitution Party of New Mexico, v. Dianna J. Duran*,
Case 1:12-cv-00325 (D. N.M. 2013) .................................................28

*Village of Schumberg v. Citizens for a Better Environment*,
444 U.S. 620, 634 (1980) .................................................................2

*Wesberry v. Sanders*, 376 U.S. 1 (1964) ...........................................21

## STATUTES

1891 Arizona Territory Session Laws, ch. 64, p. 83 ...........................5

Ariz. Rev. Stat. § 16-801 ...................................................................7

Ariz. Rev. Stat. § 16-803(C) ..............................................................8

Ariz. Rev. Stat. § 16-804(A) ..............................................................8

Arizona Election Code 16-312 ...........................................................35

Arizona Election Code 16-342 ...........................................................36

Arizona Election Code 16-343 ...........................................................36

## OTHER AUTHORITIES

The Appleseed Center for Electoral Reform and the Harvard Legislative
Research Bureau, *A Model Act for the Democratization of Ballot Access,* 36
Harv. J. on Legislation 451, 454 *12 ..................................................13

*Congressional Quarterly Guide To U.S. Elections*, Washington D.C.:
Congressional Quarterly Inc. 1985. Pp.75, 387-388 ..........................6

Eleanor Flexner, *Century of Struggle* (1959) .....................................6

**Pages**

Gallup Poll, *In U.S., Perceived Need for third Party Reaches New High* (10/11/2013) ....................................................................................13

Gilman, A.F., *The Origin of the Republican Party* (1914) ...................................6

W. Goodman, *The Two-Party System in the United States,* (Princeton: D. Van Nostrand Co. 1957) ..........................................................10

*The State of the Parties* (John C. Green & Daniel M. Shea, eds., 3rd ed. 1999) ...................................11

John D. Hicks, *The Third Party Tradition in American Politics,* 20 Miss. Valley. Hist. Rev. 3 (1933) ............................................................9,10

Hild, Matthew, *Greenbackers, Knights of Labor, and Populists, Farmer-Labor Insurgency in the Late Nineteenth Century South* (2007) ...................................6

*The Law of Democracy: *11 Legal Structure of the Political Process* (Samuel Issacharoff, Pamela S. Karlan, & Richard H. Pildes, eds., Foundation Press, 2nd ed. 2001 ......................................................................................11

Samuel Issacharoff, *Oversight of Regulated Political Markets,* 24 Harv. J.L & Pub. Policy 91, 96-97 (2000) ................................................................12

Leip, Dave, *Atlas of U.S. Presidential Elections* ..................................................8

A. Ludington, *American Ballot Laws, 1888-1910* (1911) ...................................8

Brian P. Marron, *Doubting America's Sacred Duopoly: Disestablishment Theory & The Two-Party System,* 6 Tex. F. on C.L. & C.R. 303 (2002)............11

Daniel A. Mazmanian, *Third Parties in Presidential Elections,* W. Pol. Q., Vol. 27, No. 4, p. 779 (Dec. 1974)................................................................10

Richard H. Pildes, *The Theory of Political Competition,* 85 Va. L. Rev. 1605, 1617 (Nov. 1999)...............................................................................11

A. Ranney & W. Kendall, *Democracy & the American Party System,* W. Pol. Q., Vol. 9, No. 4, p. 1015 (Dec. 1956)................................................................10

Steven Rosenstone, *Restricting the Marketplace of Ideas: Third Parties, Media Candidates & Forbes' Imprecise Standards,* 18 St. Louis U. Pub. L. Rev. 485 (1999)..............................................................................................12

**Pages**

Steven J. Rosenstone, Roy L. Behr & Edward H. Lazarus, *Third Parties in America,* (Princeton Univ. Press 1984)...........................................................10

G. Sartori, *Parties and Party Systems,* (Cambridge Univ. Press 1976)
Richard Winger, "History of U.S. Ballot Access Law for New and Minor Parties," *The Encyclopedia of Third Parties in America,* Vol. 1 (2000)..............10

# I.    STATEMENT OF JURISDICTION

(a)    *District Court Jurisdiction:* The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1343(a) and 2201. The cause of action was based on 42 U.S.C. § 1983. Venue of the action was proper in the district pursuant to 28 U.S.C. § 1391(b)(2).

(b)    *Appellate Jurisdiction:* This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

(c)    *Timeliness of Appeal:* Appellants' appeal is timely pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A). The Clerk's Judgment was entered in this action on May 16, 2014. Appellants' Notice of Appeal was filed on May 16, 2014.

(d)    *Appeal From Final Judgment:* This case is an appeal of a final judgment entered on May 16, 2014.

## II.    ISSUE PRESENTED FOR REVIEW

**1.**    Whether the district court erred by granting appellee Ken Bennett's motion for summary judgment.

## III.    STANDARD OF REVIEW

The question of whether a statute is facially unconstitutional is a pure question of law. *See Village of Schumberg v. Citizens for a Better Environment*, 444 U.S. 620, 634 (1980). The court reviews a district court's legal questions de novo. *See Caruso v. Yamhill County ex. Rel. County Comm'r*, 422 F.3d 848 (9th Cir. 2005).

We review a district court's conclusion of law de novo.
Given the special solicitude we have for claims alleging the
abridgment of First Amendment rights, we review a district
court's findings of fact when striking down a restriction on
speech for clear error. Within this framework, we review the
application of facts to law on free speech questions de novo.
*Brown v. California Dept. of Transportation*, 321 F.3d 1217, 1221

(9th Cir. 2003)(internal citations omitted).

## IV.   STATEMENT OF THE CASE

On February 25, 2014, Appellants filed their complaint for injunctive and declaratory relief alleging that the Appellee had violated their first and fourteenth amendment rights by enforcing a statutory scheme that established an excessively early petition deadline for newly qualifying political parties.

The parties mutually agreed to a briefing schedule and on April 11, 2014 each party filed their independent motions for summary judgment. The parties each filed their response on April 24, 2014.  On May 16, 2014 the district court granted the appellee's motion for summary judgment.

## V.   STATEMENT OF RELEVANT FACTS

### The Parties

Appellant the Arizona Green Party is a political party of national recognition with an extensive and productive history in national and Arizona politics. The Arizona Green Party seeks official ballot access recognition such that it may participate in the next election cycle with its own official party ballot at the

primary election and its own column on the official ballot for the general election.

Appellant Claudia Ellquist is a resident of Arizona and wishes to express and associate her support of the Arizona Green Party by placing it on the Arizona ballot during the next elections.

Appellee Ken Bennett is the Secretary of the State of Arizona, and as such, oversees the State's electoral processes. The Secretary of the State receives for filing the nomination petitions of political parties seeking official ballot recognition, reviews the validity of the nomination papers filed by political parties, and may deny official ballot access recognition to the ballot based on the invalidity of nomination papers.

## **The Statutory Schema**

The original Arizona ballot access law, passed in 1891 when Arizona was still a territory, required new parties form and qualify for the ballot a mere 20 days before the general election, a deadline that usually fell in October. *See* 1891

Arizona Territory Session Laws, ch. 64, p. 83. In 1909, when the territory instituted primaries, the deadline was moved to 30 days before the September primary, or August. In 1970 the deadline was advanced to 60 days before the primary, or July. In 1979 the deadline was advanced to 115 days before the primary, or mid-May. In 2000 it was advanced to 180 days before the primary, which then fell toward the end of March. In 2009, the deadline for new parties to qualify was moved to February, 180 days prior to the primary date. Thus, over the past century, the deadline has moved from October, to August, to July, to May, to March, to February.

Of note, many of the most significant third party efforts in the history of the country and the history of Arizona could not have qualified for the ballot under this February-qualification time frame, which, given the substantial signature gathering requirement imposes a petitioning period in January and February. For example, neither the Republican Party of Abraham Lincoln (the most successful third party of all time) could not have qualified under such an early deadline in the

5

year of its formation since it did not even form as a party until July of 1854; the famed People's Party (known as the Populist movement, the most successful third party movement of its era) could not have qualified under such an early deadline, as it did not form until July of 1892; Theodore Roosevelt's Progressive Party could not have made the Arizona ballot as it did not form until June of 1912; the leaders of the women's suffrage movement, and their National Woman's Party, could not have qualified any candidate under this early deadline, as they did not form until June of 1916; *See e.g.*, Gilman, A.F., *The Origin of the Republican Party* (1914); Hild, Matthew, *Greenbackers, Knights of Labor, and Populists, Farmer-Labor Insurgency in the Late Nineteenth Century South* (2007); *Congressional Quarterly Guide To U.S. Elections*, Washington D.C.: Congressional Quarterly Inc. 1985. Pp.75, 387-388; Eleanor Flexner, *Century of Struggle* (1959).

Arizona enjoyed high success for third party efforts, including the 29% of Presidential votes cast for the Progressive Party in 1912, 13% of Presidential votes cast for the Socialist Party in 1912, 23% of the Presidential votes for the Progressive

Party in 1924, 10% of the Presidential votes case for the American Independent Party in 1968, 8% of the Presidential votes shared between the Socialist Workers Party and the American Independent Party in 1972, and 4% split between Eugene McCarthy and the Libertarian Party in 1976, during the late-deadline ballot access of Arizona's ballot access laws. In 1996, the Reform Party made the ballot, and won 8% of Presidential votes. Since the 2000 election cycle, Arizona imposed the harshest and earliest deadline for new parties it had ever imposed.

Under current Arizona law, political parties that seek official ballot recognition that do not qualify under a "grandfather clause," (*see* Ariz. Rev. Stat. § 16-804(A)), must gather a specified number of signatures on a petition to qualify for ballot recognition, *see* Ariz. Rev. Stat. § 16-801. After gathering the required signatures, parties must then send the petitions to the secretary of state, who then sends to the respective county recorders a random sample of twenty-percent of the acquired signatures for verification. *See* Ariz. Rev. Stat. §

16-803(C). The period for gathering signatures for a new political party's ballot recognition terminates on February 27, 2014, *one of the earliest signature deadlines in the country*. *See* Ariz. Rev. Stat. §§ 16-803(A).

## The Critical Role of Ballot Access for Candidates & Minor Parties: First Amendment Fundamental Liberties

In 2012, 21 third parties fielded candidates for the Presidency, and made various state ballots across the country. *See* Leip, Dave, *Atlas of U.S. Presidential Elections*. Only two made the Presidential access ballot in Arizona. *See* Leip, Dave, *Atlas of U.S. Presidential Elections*. Similar disparities dominate this last decade of Presidential ballots when Arizona moved its historic 20-60 day deadline up to 180 days. *See* Leip, Dave, *Atlas of U.S. Presidential Elections*.

State control of the ballot was foreign to the founders of America. *See* Richard Winger, "History of U.S. Ballot Access Law for New and Minor Parties," *The Encyclopedia of Third Parties in America,* Vol. 1 (2000); *see also* A. Ludington, *American*

*Ballot Laws, 1888-1910* (1911). The invention of the state ballot originated in the late nineteenth century. *See id.* Before that, voters and their supporters could bring their own ballot to the voting polls. *See id.* Most states adopted the state ballot and employed free and open ballot access to be as inclusive as many voter options as possible, with few ballot access restrictions, during most of the first half-century of state ballots. *See id.*

This period of open ballot birthed some of the most significant independent political efforts outside the two-party system in our history. *See e.g.*, John D. Hicks, *The Third Party Tradition in American Politics,* 20 Miss. Valley. Hist. Rev. 3 (1933). The collective efforts of outsider candidacies are widely credited as creating the most significant and beneficial reforms in American political history as the "fertile" bed of new ideas. *See Anderson v. Celebrezze,* 460 U.S. 780 (1983); *see also Illinois Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 185 (1979) ("The States' interest in screening out frivolous candidates must be considered in light of the significant role that third parties have played in the political development of the Nation.")

Outsider options through third-party campaigns or candidacies provide the most effective method of expression by those feeling excluded from the two-party system, but does so within the system: channeling dissent through democratic means and giving voice to that dissent. This type of dissent led to abolition, direct election of senators, the right of women and draft-eligible citizens to vote, the right to overtime, the limits on child labor, aid to farmers, and expanded participation in the public arena with more; confidence in American institutions as representative of them. *See e.g.*, John D. Hicks, *The Third Party Tradition in American Politics,* 20 Miss. Valley. Hist. Rev. 3 (1933); A. Ranney & W. Kendall, *Democracy & the American Party System,* W. Pol. Q., Vol. 9, No. 4, p. 1015 (Dec. 1956); W. Goodman, *The Two-Party System in the United States,* (Princeton: D. Van Nostrand Co. 1957); Daniel A. Mazmanian, *Third Parties in Presidential Elections,* W. Pol. Q., Vol. 27, No. 4, p. 779 (Dec. 1974); G. Sartori, *Parties and Party Systems,* (Cambridge Univ. Press 1976); Steven J. Rosenstone, Roy L. Behr & Edward H. Lazarus, *Third Parties in America,* (Princeton Univ. Press 1984).

It was only when third parties and candidates outside the party system began to seriously challenge for power or reshape the debate in ways the political incumbents found threatening that state approaches to the state ballot began to change. *See e.g.*, Richard H. Pildes, *The Theory of Political Competition,* 85 Va. L. Rev. 1605, 1617 (Nov. 1999) (noting "the history of ballot access restrictions which get elevated just as serious new parties or independent candidates emerge as threats"); James Reichley, "The Future of the Two-Party System After 1996", in *The State of the Parties* (John C. Green & Daniel M. Shea, eds., 3rd ed. 1999) ("The representatives of the two major parties have taken pains to enact election laws that strongly favor major party candidates"); *The Law of Democracy:* *11 *Legal Structure of the Political Process* (Samuel Issacharoff, Pamela S. Karlan, & Richard H. Pildes, eds., Foundation Press, 2nd ed. 2001) (noting "the self-interest existing power holders have in manipulating the ground rules of democracy in furtherance of their own partisan, ideological, and personal interests"); Brian P. Marron, *Doubting America's Sacred Duopoly: Disestablishment*

*Theory & The Two-Party System,* 6 Tex. F. on C.L. & C.R. 303 (2002); Samuel Issacharoff, *Oversight of Regulated Political Markets,* 24 Harv. J.L & Pub. Policy 91, 96-97 (2000) (the natural side effect of politicians overseeing the terms and conditions of their competition is to limit that competition through ballot rules).

With the slow, steady closing of the ballot, more and more independent and outside parties disappeared from potential choices for voters, disappeared from the public discourse, and disappeared from the public consciousness. Other scholars note how badly these restrictions limit the marketplace of ideas the First Amendment was intended to promote and protect. *See* Steven Rosenstone, *Restricting the Marketplace of Ideas: Third Parties, Media Candidates & Forbes' Imprecise Standards,* 18 St. Louis U. Pub. L. Rev. 485 (1999).

The public increasingly concurs, as they refuse partisan labels in registration, voting patterns and public opinion, while seeking more options for debate participants in Presidential

debates and more options for choices on the ballot. *See* The Appleseed Center for Electoral Reform and the Harvard Legislative Research Bureau, *A Model Act for the Democratization of Ballot Access,* 36 Harv. J. on Legislation 451, 454 *12 (noting wide spread public desire for third options outside the two-party system in consistent public opinion surveys). The irony in states like Arizona is that the more voters refuse to align with partisan registration, the more difficult it is to include independents on the ballot, as the signature requirements increase proportionally.

Arizona has shown a particular historic propensity for third party alternative and third party options, from the progressives at the beginning of the century to the similarly minded reformers at the end of the century. The Green Party is a nationally significant party for more than two decades, winning more third party votes for the Presidency than any party since 1996 in the state of Arizona. The demand for third party inclusion grows. Gallup Poll, *In U.S., Perceived Need for third Party Reaches New High* (10/11/2013).

## VI.   ARGUMENT SUMMARY

The sole question put before the district court was whether the February 28 petition deadline for new qualifying parties meets Constitutional standards for party formation and ballot access, protected through the First Amendment as part of the ordered liberty guarded by the Fourteenth Amendment concerning state action.

The early February deadline for turning in nominating petitions predates the primary by 180 days and predates the general election by 248 days. This deadline is far earlier than deadlines in sister states across the country. This deadline is far earlier than the deadline in Arizona for ballot access for most of Arizona's 100+ year history of printing ballots. This deadline rendered it impossible for the Green Party, a party of national recognition with an extensive and productive history in national and Arizona politics, to gather sufficient signatures to meet the deadline's requirements. As such, this deadline will prevent the Green Party from access to the 2014 ballot.

Consequently, this early deadline will deny voters the option of supporting the Green Party, while denying Green Party supporters their chance to have their party field candidates on the ballot, and to cast votes in favor of those candidates, impacting and influencing the debate over substantive issues along the way. For this reason, the appellants assert that the early deadline is on its face unconstitutional.

In addition, appellants believe that no harm will come to the appellee from extending the burdensome deadline to the month of June. A June time frame for new party qualifying petitions is far less burdensome than the shorter-timeline requirements on constitutional amendments, which provides for verification of ten-times more signatures to be reviewed in substantially less time under the guidelines for ballot access to constitutional amendments.

Lastly, Appellee's assertion that the February deadline is necessary to conform with the state's primary schedule is of no merit. Courts across the country have found alternative means

for allowing newly qualifying parties to nominate a candidate to put on the ballot, such as allowing the party to nominate by convention.

## VII.  ARGUMENT

### A.    The Statutory Deadline is Facially Unconstitutional.

Arizona's party qualification deadline is among the earliest in the nation and is much earlier than numerous early deadlines that courts have struck down repeatedly over the past four decades. The exceptionally early deadline is neither necessary nor a reasonable means to serve any legitimate state interest while it unduly burdens minor parties and the voters' right to have options on the ballot. The Secretary of State in enforcing the February deadline has deprived Plaintiffs of the rights, privileges and immunities secured to them under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C § 1983 to participate in the democratic process free from unreasonable impediments.

As to the standards for evaluating Plaintiffs' constitutional challenges to State ballot access laws, "To the degree that a State would thwart this interest by limiting the access of new parties to the ballot" then the Court has consistently "called for the demonstration of a corresponding interest sufficiently weighty to justify the limitation," *Norman v. Reed,* 502 U.S. 279, 288–89, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992). Indeed, "it is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group." *Anderson*, 460 U.S. at 780. Where "such laws serve to bar recognition of a new political party seeking ballot access, they must be narrowly drawn in the least restrictive means possible to advance a state interest of compelling importance." *Citizens To Establish a Reform Party in Arkansas v. Priest*, 970 F. Supp. 690, 695-96 (E.D. Ark. 1996) (citing *Norman v. Reed,* 502 U.S. 279, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992).

The Supreme Court of the United States has recognized repeatedly that the right to create a new political party derives from the First and Fourteenth Amendments and allows voters

to enlarge their opportunities to express their political beliefs;
the ability of citizens to band together in promoting among the
electorate candidates who espouse their political views."
*California Democratic Party v. Jones,* 530 U.S. 567, 574 (2000); *see
also Tashjian v. Republican Party of Conn.,* 479 U.S. 208, 214, 107
S.Ct. 544, 93 L.Ed.2d 514 (1986) (recognizing as fundamental
"[t]he right to associate with the political party of one's
choice"); *Citizens To Establish a Reform Party in Arkansas v. Priest,*
970 F. Supp. 690, 695 (E.D. Ark. 1996).

   "Representative democracy in any populous unit of
governance is unimaginable without These rights are
intertwined in that "the rights of voters and the rights of
candidates do not lend themselves to neat separation; laws that
affect candidates always have at least some theoretical
correlative effect on voters." *Anderson*, 460 U.S. at 786.
Additionally, statutes restricting "the access of political parties
to the ballot impinge upon the rights of individuals to associate
for political purposes, as well as the rights of qualified voters to

cast their votes effectively." *Munro v. Socialist Workers Party,* 479 U.S. 189, 193 (1986).

"The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes. So also, the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot." *Williams,* 393 U.S. at 31. "Competition in ideas and governmental policies is at the core of our electoral process and of the First Amendment freedoms. New parties struggling for their place must have the time and opportunity to organize in order to meet reasonable requirements for ballot position, just as the old parties have had in the past." *Id.* at 32. "In our political life, third parties are often important channels through which political discourse is aired." *Id.* at 39 (Douglas, J., concurring).

Indeed: "Any interference with the freedom of a party is simultaneously an interference with the freedom of its

adherents. All political ideas cannot be channeled into the programs of our two major political parties. History has amply proved the virtue of political activity by minority, dissident groups, which innumerable times have been in the vanguard of democratic thought and whose programs were ultimately accepted....The absence of such voices would be the symptom of grave illness in our society." *Sweezy v. New Hampshire,* 354 U.S. 234, 250–51, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957) (Warren, C.J.).

Several fundamental rights are impacted by this statutory imposition on small party access to the ballot. "Such rights include Plaintiffs' right to create a new political party, the right to associate for the advancement of political beliefs, the right of candidates to run for office and the right to vote freely, effectively, and for the candidates of their choice. *Norman v. Reed,* 502 U.S. 279, 288–90, 112 S.Ct. 698, 705–06, 116 L.Ed.2d 711, 723 (1992); *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Lubin v. Panish,* 415 U.S. 709, 716, 94

S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974); *Sweezy v. New Hampshire,* 354 U.S. 234, 250, 77 S.Ct. 1203, 1211–12, 1 L.Ed.2d 1311 (1957); and *Eu v. San Francisco County Democratic Central Comm.,* 489 U.S. 214, 224, 109 S.Ct. 1013, 1020–21, 103 L.Ed.2d 271 (1989)." *Citizens To Establish a Reform Party in Arkansas v. Priest*, 970 F. Supp. 690, 696 (E.D. Ark. 1996)

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1 (1964). The right to form political parties, and vote for those party candidates, "rank among our most precious freedoms." *Williams v. Rhodes*, 393 U.S. 23 (1968). Thus, the Court recognizes "the constitutional right of citizens to create and develop new political parties." *Norman v. Reed*, 502 U.S. at 288. Hence, any severe restriction on "access of new parties the ballot," requires the state law by "narrowly drawn" and the justification for the law be "a state interest of compelling importance" that the law is "necessary" and

"narrowly drawn to advance." *Norman v. Reed*, 502 U.S. at 288-

289; *see also Citizens To Establish a Reform Party in Arkansas v.*

*Priest*, 970 F. Supp. 690, 696 (E.D. Ark. 1996).

"An individual's right to vote is heavily burdened if the

individual can choose from only two parties when there are

other parties demanding a place on the ballot—and, that the

right to form a party for the advancement of political goals

means little if a party can be kept off the election ballot and is

denied an equal opportunity to win votes. Competition in ideas

and governmental policies is at the core of the electoral process

and of the First Amendment freedoms of speech and

association. The right of individuals to associate for the

advancement of their political beliefs and to create a new

political party is a fundamental right guaranteed by the First

and Fourteenth Amendments." *Citizens To Establish a Reform*

*Party in Arkansas v. Priest*, 970 F. Supp. 690, 695 (E.D. Ark. 1996).

"Unreasonably early petition filing deadlines have the

effect of barring minor political parties from access to the ballot,

thereby excluding new, competitive political viewpoints and candidates from the electoral process. Such deadlines have consistently been invalidated as unconstitutional by numerous Federal and State Courts." *Citizens To Establish a Reform Party in Arkansas v. Priest*, 970 F. Supp. 690, 696 (E.D. Ark. 1996) *MacBride v. Exon,* 558 F.2d 443 (8th Cir.1977) (February deadline too early). *See Libertarian Party of Ky. v. Ehrler,* 776 F.Supp. 1200, 1205–06 (E.D.Ky.1991) (January deadline, 119 days before the primary); *Cripps v. Seneca County Bd. of Elections,* 629 F.Supp. 1335, 1338 (N.D.Ohio 1985) (February deadline for independent candidates, 75 days before the primary).

The Supreme Court repeatedly invalidated laws limiting voter choice on the ballot. *See Norman v. Reed*, 502 U.S. at 279 (affirming right of Harold Washington Party access to the ballot); *Anderson*, 460 U.S. at 780 (affirming right of supporter of John Anderson's inclusion on the ballot); *Socialist Workers Party*, 440 U.S. 173 (affirming right of Socialist Workers Party and U.S. Labor Party to obtain ballot access); *McCarthy v. Briscoe*, 429 U.S. 1317 (1976) (affirming right of McCarthy to obtain ballot

access); *Community Party of Indiana v. Whitcomb*, 414 U.S. 441 (1974) (affirming right of Communist Party to access ballot); *Amos v. Hadnott*, 394 U.S. 358 (1969) (affirming inclusion of National Democratic Party of Alabama on the ballot); *Williams v. Rhodes*, 393 U.S. 23 (1968) (affirming right of American Independent Party's inclusion on the ballot.

When a law burdens those unprotected by the traditional legislative processes, like minor parties unrepresented therein and a threat to the major parties controlling the legislative process, then judicial scrutiny in aid of First Amendment protection proves particularly apt. "In addition, because the interests of minor parties and independent candidates are not well-represented in state legislatures, the risk that the First Amendment rights of those groups will be ignored in legislative decision-making may warrant more careful judicial scrutiny." *Anderson* at 793, n.16. Courts must be especially cognizant of such discriminatory effects. *See Anderson v. Hopper*, 498 F.Supp. 898 (D.N.M. 1980).

24

More recently, the Sixth Circuit observed that where a "State ... is controlled by the political parties in power, '[those parties] presumably have an incentive to shape the rules of the electoral game to their own benefit.' " *Blackwell,* 462 F.3d at 587 (quoting *Clingman v. Beaver,* 544 U.S. 581, 603, 125 S.Ct. 2029, 161 L.Ed.2d 920 (2005) (O'Conner, J., concurring)). " 'In short, the primary values protected by the First Amendment ... are served when election campaigns are not monopolized by the existing political parties.' " *Id.* at 589 (quoting *Anderson,* 460 U.S. at 794). At the same time, courts realize that the State may not be a "wholly independent or neutral arbiter" as it is controlled by the political parties in power, "which presumably have an incentive to shape the rules of the electoral game to their own benefit." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 587 (6th Cir. 2006); *Clingman v. Beaver,* 544 U.S. 581, 125 S.Ct. 2029, 2044, 161 L.Ed.2d 920 (2005) (O'Conner, J., concurring). The court noted that a "burden that falls unequally on new or small political parties or on independent candidates

impinges, by its very nature, on associational choices protected by the First Amendment." *Id.* at 794-795.

Additionally, ballot exclusions that leave petition drives in the dead period of an election cycle must be viewed skeptically, as volunteers prove more difficult to recruit and retain, publicity and donations prove more difficult to secure, and lesser voter interest in the election cycle makes signatures more difficult to procure and obtain. *See Anderson* at 792; *see also Dunn v. Blumstein*, 405 U.S. 330, 358 (1972) (noting most voter issues occur closest to the election, deadlines that pre-date that time are rarely necessary.).

Of note, a court should also examine how sister states' deadlines apply to similarly situated small parties in assessing the need and justification for early deadline restrictions in particular. *See Rockefeller v. Powers*, 917 F.Supp. 155, 161 (E.D.N.Y. 1996). The Supreme Court has already expressly found: "Seventy five days appears to be a reasonable time for processing the documents submitted by the candidates in

preparing the ballot." *Anderson* at 800. Following Anderson, the Ninth Circuit reaffirmed the same. *See Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008).

Fellow federal courts follow suit. *See Nader 2000 Primary Comm., Inc., v. Hazeltine*, 110 F.Supp.2d 1201, 1208 (D.S.D. 2000) (invalidating early deadline for ballot access); *McCarthy v. Hardy*, 420 F.Supp. 410 (E.D. La. 1976) (invalidating early deadline for ballot access); *McCarthy v. Noel*, 420 F.Supp. 799 (D.R.I. 1976)(invalidating early deadline for ballot access); *McCarthy v. Kirkpatrick*, 420 F.Supp. 366 (W.D. Mo. 1976) (invalidating early deadline for ballot access). Similar new-party deadlines have been invalidated across the country. *See e.g., McClain v. Meier*, 637 F.2d 1159 (8th Cir. 1989) (invalidating June deadline for newly qualifying parties); *MacBride v. Exon,* 558 F.2d 443 (8th Cir.1977) (February deadline too early).

*Libertarian Party of Tennessee v. Goins*, 793 F.Supp.2d 1064 (M.D. Tenn. 2010) (invalidating March deadline for newly qualifying parties); *California Justice Committee v. Bowen*, No. CV

12-3956 (C.D. Cal. October 18, 2012) (invalidating January
deadline for newly qualifying parties); *The Constitution Party of
New Mexico, v. Dianna J. Duran*, Case 1:12-cv-00325 (D. N.M.
2013); *Citizens To Establish a Reform Party in Arkansas v. Priest*,
970 F. Supp. 690, 696 (E.D. Ark. 1996); *Libertarian Party of Ky. v.
Ehrler*, 776 F.Supp. 1200, 1205–06 (E.D.Ky.1991) (deadline 119
days before the primary too early).

Early deadlines effectively preclude important issues
raised in the same year as an election to not be responded to by
the formation of a new political party. "The combination of
these burdens impacts the party's ability to appear on the
general election ballot, and thus, its opportunity to garner votes
and win the right to govern." *Libertarian Party of Tennessee v.
Goins*, 793 F. Supp. 2d 1064, 1088 (M.D. Tenn. 2010). Many
courts have documented the burden imposed by statutes
requiring political parties to file registration petitions far in
advance of the primary and general elections. *Libertarian Party
of Ohio v. Blackwell*, 462 F.3d 579, 586-87 (6th Cir. 2006)

The logic from each of those cases applies here. Of note, Arizona's deadline for the more signature-intensive petitions governing initiatives, constitutional amendments and referendums are not due until July 3, 2014, a far later deadline for far more signature review pre-ballot than is required of a new party merely seeking access to the ballot. There is no basis for Arizona to impose this un-historic early deadline when sister states and Arizona's own history and experience shows no need for such an early deadline. As is, with a signature requirement of more than 23,000 signatories, each of whom must be a registered voter in the state of Arizona (and whose signature can be struck for a wide range of reasons, including unintended errors), more than suffices to meet the needs of sufficient support for access to the ballot. Later deadlines for most of Arizona's history and for most of the rest of the country work just fine; this deadline cannot meet Constitutional scrutiny of any meaningful First Amendment protection.

### B.     Appellants Will Be Irreparably Harmed By the Early Deadline.

The challenged provision, if allowed to remain in effect, will cause significant harm to the Appellants' First Amendment rights that cannot be adequately remedied afterwards. "The loss of First Amendment Rights, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 353 (1976) (citing *New York Times v. United States*, 403 U.S. 713 (1971)). The challenged provision hinders the Arizona Green Party from securing sufficient petition signatures so as to ballot access. If the challenged provision remains in effect, the Arizona Green Party will undoubtedly be denied access to the ballot this year.

In addition, both supporters within the state will suffer similar harm to their rights of political association if they are unable to vote for the candidates and parties they support in the general election if the challenged provision prevents the Arizona Green Party from obtaining the signatures needed to

gain a place on the ballot, and supporters outside the state will see their vote diminished because the Green Party will become stronger nationally if the Green Party has an official presence in more and more states. *Cf. Anderson*, 460 U.S. at 787 (recognizing harm to voters' First Amendment rights of association when they are unable to vote for the candidates they support).

Denial of access to the ballot for an entire party for an entire election year effectively forecloses organizing the party during the election seasons, providing access to independent ideas and independent sources for political expression during the ever-changing election season, each of which proved essential to the causes and candidates supported by reform and progressive elements throughout our history.

These harms cannot be adequately remedied if the challenged provision remains in effect. The challenged provision as currently written and enforced, significantly hinders the Arizona Green Party's campaign for ballot access. Leaving the provision in place will effectively deny all

Appellants' core constitutional freedoms of free speech and political associations.

### C.    <u>No Harm Would Come To the State of Arizona From Extending the Deadline.</u>

Appellants do not believe that any harm would come to the State of Arizona from extending the deadline to a date in June. As of this election cycle, Appellee will only have to verify twenty-percent of the petition signatures, whereas in previous election cycles Appellee was able to verify 100 percent of the signatures. A June time frame for new party qualifying petitions is far less burdensome than the shorter-timeline requirements on constitutional amendments, which provides for verification of ten-times more signatures to be reviewed in substantially less time under the guidelines for ballot access to constitutional amendments.  The recommended June time frame more than suffices for small party candidacies for states all across the country. The recommended June time frame worked exceptionally well in the technologically less

sophisticated days of almost all of Arizona's election history. As such, it suffices here.

## D.    Newly Qualifying Parties May Nominate By Convention To Remedy Any Conflict With the State's Primary Schedule.

Various federal courts directly placed candidates on the ballot where ballot access deadlines were invalidated, either by party designation or by party convention nomination. The United States Supreme Court did so. *See Williams v. Rhodes*, 393 U.S. 23, 35 (1968). Fellow federal district courts have done so. *See Socialist Labor Party v. Rhodes*, 318 F. Supp. 1262, 1273 (S.D. Ohio 1970); *Libertarian Party of Oklahoma v. Oklahoma State Election Bd.*, 593 F. Supp. 118, 124 (W.D. Okla. 1984); *Libertarian Party of Nevada v. Swackhamer*, 638 F.Supp. 565 (D. Nev. 1986); *Libertarian Party of Ohio v. Brunner*, 567 F. Supp. 2d 1006, 1015 (S.D. Ohio 2008);

In Ohio, the American Independent Party was rejected for turning in their petition too late. The state law required the

33

petition in February so the party could participate in the May primary. The Supreme Court put them on the November ballot, despite the fact that the party did not turn its petition in until July, after the primary was over. *See Williams v. Rhodes*, 393 U.S. 23, 35 (1968).

The Socialist Labor Party won their case invalidating the too-high petition signature requirement but was too late to participate in the state mandated primary. The court ordered their nominees on the ballot, and the party nominated by convention. *See Socialist Labor Party v. Rhodes*, 318 F. Supp. 1262, 1273 (S.D. Ohio 1970). A similar decision was issued in Ohio. *See Libertarian Party of Ohio v. Brunner*, 567 F. Supp. 2d 1006, 1015 (S.D. Ohio 2008). Similar such ballot access was mandated for the Nevada Libertarian Party. *See Libertarian Party of Nevada v. Swackhamer*, 638 F.Supp. 565 (D. Nev. 1986).

In Oklahoma, the Libertarian Party of Oklahoma won summary judgment invalidating the state's too short petitioning period. By the time the case was decided, it was too

late for the party to participate in the primary. The court

ordered the parties to agree on a new method to put the

Libertarians on the ballot, and the party nominated by

convention. *Libertarian Party of Oklahoma v. Oklahoma State*

*Election Bd.*, 593 F. Supp. 118, 124 (W.D. Okla. 1984).

More recently in Tennessse, the Green Party and the

Constitution Party won judgment invalidating the state's early

deadline and onerous signature requirement. The court ordered

both parties placed on the November ballot. Notably, the court

ruled that it is unconstitutional to require new parties to

nominate by primary if they would rather nominate by

convention. *Green Party of Tennessee v Hargett*, 882 F Supp 2d

959 (m.d. Tennessee 2012).

Equally, Arizona election law expressly allows a minor

party to nominate a candidate by write-in under circumstances

such as these, with a nomination deadline of 40 days prior to

the primary, or July 20, 2014. *See Arizona Election Code 16-312.*

Separately, Arizona election law also expressly allows nomination by convention in certain circumstances, such as where a primary election is impracticable in special elections. *See Arizona Election Code 16-342.* In the same regard, Arizona election law expressly allows for non-primary nomination process of candidate access where exigent circumstances warrant, which includes the option of executive committee nomination. *See Arizona Election Code 16-343.*

## VII.  CONCLUSION

For the foregoing reasons, the Appellants respectfully requests the Court to reverse in its entirety the Appellee's motion for summary judgment.

Dated this 25th day of August, 2014.

s/ Robert E. Barnes

Robert E. Barnes

*Counsel for Appellants*

## <u>STATEMENT OF RELATED CASES PURSUANT TO NINTH CIRCUIT RULE 28-2.6</u>

Appellants are unaware of any pending related cases before this Court as defined in Ninth Circuit Rule 28-2.6.

Dated: August 25, 2014

s/ Robert E. Barnes

Robert E. Barnes

*Counsel for Appellants*
